UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

RENITA GRAY PLAINTIFF

V. CIVIL ACTION NO. 3:25-CV-134-GHD-RP

BOARD OF TRUSTEES OF THE STATE
INSTITUTIONS OF HIGHER LEARNING
FOR THE STATE OF MISSISSIPPI d/b/a
THE UNIVERSITY OF MISSISSIPPI DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Renita Gray initiated this civil action by filing her Complaint [1] on April 28, 2025. The Complaint [1] brings a claim of race discrimination pursuant to Title VII against the Defendant, the University of Mississippi ("the University"). Presently before the Court is the University's Motion for Summary Judgment [38]. Through its instant Motion [38], the University seeks to dismiss the sole claim brought against it. After review, the Court finds that the Motion [38] should be granted.

## *I. Relevant Factual Background*

In 2016, Gray, a white woman, began working at the University as the Manager of Sponsored Programs Accounting. Thereafter, in February 2023, she was appointed Interim Director of Sponsored Programs Administration ("SPA"). In this role, Gray reported to the Vice Chancellor of Research and Sponsored Programs who, as of July 2023, was Greg Easson.

During her tenure as Interim Director, Gray supervised between fourteen and seventeen employees—one of them being Ventez Jones, a black man. Jones worked as a research administrator in the SPA department. Gray's predecessor, Melissa Hodge-Penn, warned Gray that Jones was, among other things, insubordinate. Prior to Gray taking over the Interim Director

position, Hodge-Penn had placed Jones on a progressive discipline plan, which later expired during Gray's tenure.

During the relevant time frame, Gray and Jones had a contentious working relationship. Gray constantly reported issues of insubordination, tardiness, and hostility on the part of Jones to Easson. Sometime in March 2024, Gray became aware of a complaint Jones made against her with the University's Office of Equal Opportunity and Regulatory Compliance ("EORC"). Specifically, Jones complained that Gray had discriminated against him on the basis of his race and sex in relation to the following topics: "bias in hiring, pay equity, remote work, and cameras being placed in his working space." [38], Ex. 12 at p. 1. The EORC formally notified Gray of Jones' complaint via email on April 22, 2024. Staff members of the EORC subsequently conducted an investigation into Jones' allegations against Gray, which included interviewing Jones and Gray, as well as ten other witnesses. *See id*. at p. 2.

In early April 2024, Gray expressed to several of her colleagues that she intended to retire in January 2025. On April 19, 2024, in reply to an email from Easson, Gray indicated that, between her recurring issues involving Jones "and the issues others within SPA [had] with [her] and [her] decisions," she felt it was best "for all concerned to retire and move on." *Id.*, Ex. 6 at p. 1. Gray continued to express her intent to retire in early 2025 to her colleagues and to a third party in May 2024. Following a meeting with Easson on May 14, 2024, Gray emailed three of her colleagues confirming her plans to retire and making the following announcement:

> I met with Greg [Easson] earlier today and have agreed to step back as Interim Director of SPA. The new VCRED will be involved in hiring a permanent Director starting July 1st. I have agreed to stay on as Interim Associate or Assistant Director until my retirement in January.
>
> I am not discussing this publicly until the new VCRED is announced, which may not occur as soon as originally envisioned.

> Know that this was my decision to make, and I am happy to step back from the stress and daily drama. I will be available to assist the new Director get acclimated to the position and will hopefully assist in SPA's continued success.

[38], Ex. 7 at p. 1.

During the same time frame, on April 16, 2024, Gray developed symptoms of Bells Palsy, and was officially diagnosed with that condition the following day. She testified that the condition lasted six to eight weeks and that she fully recovered thereafter. Gray believed the condition was a result of the stress of working with Jones.

On June 6, 2024, the EORC provided Gray with its investigative report, which found that "[t]here [was] sufficient evidence to find Ms. Gray engaged in racial discrimination [against Jones] in violation of the University's Non-Discrimination and Sexual Harassment Policy." *Id.*, Ex. 12 at p. 6. The report detailed that, during Gray's interview with EORC staff, Gray "admitted when asked if she was comfortable around Black and non-White people that she was 'very uncomfortable' and had sought help with it from the University's Division of Diversity of Community Engagement." *Id*. As to Jones' claim of gender discrimination against Gray, the EORC found that there was insufficient evidence to support that claim. *See id*.

Gray disputes that she expressed being uncomfortable around black and non-white persons during her interview with EORC staff. Rather, during her deposition, Gray stated that she told her interviewers that she was very uncomfortable about being accused of discrimination and being interviewed. According to Gray, she "assumed that they purposely misstated that because that was the only way they could come up with something to side with a black over [her] as a white female." [47], Ex. 1 at p. 169. When asked about the basis for her assumption, Gray testified that "the charge of [the EORC], per se, is to protect minorities and women." *Id*.

As a result of its findings, the EORC made the following recommendation pertaining to Gray:

> It is recommended that Ms. Gray be removed from all supervisory roles within ORSP. Dr. Jones should have an alternative reporting structure if Ms. Gray cannot be removed from these duties. Additionally, it is recommended that Ms. Gray seek non-bias, sensitivity training to gain assistance on how to work better with people of different ethnicities and backgrounds.

[38], Ex. 12 at p. 6.

Gray appealed the EORC's findings to Dr. Wilkin, the University's Provost, to no avail. Ultimately, the University decided not to remove Gray from her supervisory role within the SPA so as to avoid potential disruption to the functions of that department. Instead, Easson elected to have Jones report to him instead of to Gray as alternatively recommended by the EORC report. In a memo to Dr. Wilkin and Honey Ussery (an EORC staff member who participated in Gray's EORC interview), Easson confirmed his plan to supervise Jones. Easson stated that this arrangement would be temporary as the University planned to post the vacant Director of SPA position, and that person would later become Jones' supervisor.

On July 31, 2024, Gray sent an email to Easson officially notifying him of her planned retirement on January 31, 2025. The following month, on August 19, 2024, Gray filed an EEOC charge against the University alleging that she had been discriminated against based on her race. Gray then retired from the University in January 2025. This lawsuit followed her receipt of a right-to-sue letter.

## ***II. Standard of Review***

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id*. at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324; *Littlefield v. Forney Indep. Sch. Dist*., 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc*., 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

## ***III. Analysis and Discussion***

As noted above, Gray brings a race discrimination claim against the University under Title VII. "Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment

because of the individual's race." *Johnson v. SE Tylose Louisiana, LLC*, 2026 WL 917417, at *9 (M.D. La. Mar. 31, 2026) (citing 42 U.S.C. § 2000e-2(a)(1)).

In support of her claim, Gray relies on circumstantial evidence and therefore the familiar *McDonnell Douglas* burden-shifting framework applies. *See Harville v. City of Houston, Mississippi*, 945 F.3d 870, 874 (5th Cir. 2019). "Under that framework, [Gray] must first make a prima facie case of race discrimination, and then the burden of production shifts to [the University] to proffer a legitimate, nondiscriminatory reason for [its] action." *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021) (citing *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)). If the University does that, "the presumption of discrimination disappears," and Gray "must then produce substantial evidence indicating that the proffered legitimate[,] nondiscriminatory reason is pretext for discrimination." *Id.*

To establish a prima facie case of racial discrimination under Title VII, a plaintiff must show that "[she] (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (quoting *Stroy v. Gibson on behalf of Dep't of Veterans Affs.*, 896 F.3d 693, 698 (5th Cir. 2018)) (internal quotation marks omitted). The University only contests the third and fourth elements.

Regarding the third element, the University argues that Gray experienced no adverse employment action because she voluntarily retired. At the outset, the Court clarifies the adverse employment action alleged by Gray as the basis for her discrimination claim.

According to the Complaint [1], Gray alleges that she was forced to leave her position as interim director and to resign from her employment with the University based on her race. *See* [1] at p. 3. In other words, the Complaint [1] claims that Gray was constructively discharged. Notably, however, in her Response Memorandum, Gray appears to abandon that theory of her claim arguing that "Defendant incorrectly assumes that only being forced from a job is actionable." [48] at p. 15. She then argues that "[b]ecause Gray was formally removed from all supervisory responsibilities, and because she was branded with having behaved in a racially discriminatory manner against another employee, Gray suffered some harm." *Id*. The Court nonetheless analyzes whether Gray was constructively discharged out of an abundance of caution before addressing the other theories she now advances.

"A resignation can only constitute an adverse employment action where that resignation amounts to a constructive discharge." *Smith v. McDonough*, 2024 WL 6069304, at *5 (W.D. Tex. June 10, 2024) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)) (internal quotation marks omitted). "To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id*. The Fifth Circuit considers the following factors in determining whether the objective standard is met:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status[.]

*Id*. (citing *Brown*, 237 F.3d at 566); *see also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005).

This inquiry considers "only circumstances imposed by the employer; the employee's subjective state of mind is irrelevant." *Id*. (citing *Robinson v. Waste Mgmt. of Texas*, 122 F. App'x 756, 758 (5th Cir. 2004)).

The only circumstance imposed by the University with which Gray takes issue concerns the EORC's investigation of Jones' discrimination complaint against her. There is no dispute that the EORC is the department at the University designated to receive and investigate complaints of discrimination. *See* [38], Ex. 12 at p. 1. Importantly, Gray does not argue that the investigation itself or that the EORC's findings were "calculated" by the University "to encourage" her to resign from her position. *Id*. As the University points out, Gray has provided no evidence to indicate that the University published the results of the EORC's investigation, and the Court notes that the report is labeled "confidential." *See generally* [38], Ex. 12. There is simply no evidence in the record that would support finding that the University's routine investigation of a discrimination complaint created an intolerable workplace, and the Court does not find that a reasonable employee would find that to be the case. *See Hinojosa v. CCA Props. of Am., LLC*, 400 F. App'x 920, 922 (5th Cir. 2010) (explaining that the relevant test is objective "asking whether a reasonable employee in [plaintiff's] circumstances would have felt compelled to resign, not whether [she] actually felt compelled to resign.").

Further, Gray does not address any of the relevant constructive discharge factors in her Response Memorandum [48], nor does she contend that the University imposed a hostile working environment upon her. *See Keelan*, 407 F.3d at 342 ("Aggravating factors used to support constructive discharge include hostile working conditions or the employer's invidious intent to create or perpetuate the intolerable conditions compelling the resignation."). To the extent Gray bases her claim on a constructive discharge, the Court finds that she has failed to come forward

with sufficient evidence to create an issue of fact as to that form of an adverse employment action. *See id.* ("The resigning employee bears the burden to prove constructive discharge.").[1]

Turning to Gray's specific arguments relative to the third element of her claim, Gray argues that she suffered independent adverse employment actions in that she was allegedly removed from all supervisory responsibilities and by virtue of the EORC's findings against her. One of these theories is easily disposed of as it is undisputed that, while the EORC report *recommended* that Gray be removed from all supervisory roles within SPA, the University rejected that recommendation and did not implement it. Gray's claim based on that theory is therefore subject to dismissal.

In support of her argument that the EORC's findings amount to an adverse employment action on the part of the University, Gray relies on the United States Supreme Court's decision in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024). In *Muldrow*, the Supreme Court held that, while "an employee must show some harm" from the asserted adverse employment action, "she need not show that the injury satisfies a significance test." *Id*. at 350. It further held that the phrase "terms or conditions of employment" requires employees to show that the asserted adverse employment action "brought about some 'disadvantageous' change in an employment term or condition." *Id*. at 354.

[1] As an aside, the Court notes that, in her EEOC charge, Gray alleges that Easson had instructed and demanded her to retire following the EORC report. *See* [1], Ex. 1 at p. 1-2. The Court finds that contention unsupported by the record, and Gray does not raise any such argument in her Response Memorandum [48]. Thus, even if Gray had intended to advance that position, the Court finds that she has waived it in failing to adequately brief the issue at this stage. *See Chatton v. Bosede*, 2026 WL 845251, at *3 (E.D. Tex. Mar. 2, 2026), report and recommendation adopted, 2026 WL 840602 (E.D. Tex. Mar. 26, 2026) ("A party's failure to brief an argument in response to a summary judgment motion waives that argument.") (collecting cases).

The Court is cognizant that Gray disputes the basis for the EORC's findings and denies ever expressing that she was uncomfortable around black and non-white persons during the EORC's investigation (and which appears to be the crux of her claim against the University). However, the Court finds Gray's argument misplaced as it fails to address the question before the Court. To be clear, the question at this stage does not concern whether the EORC's findings were accurate. Instead, with respect to the third element of Gray's claim, the issue is whether Gray suffered "some harm *respecting an identifiable term or condition of employment*." *Id*. at 355 (emphasis added). Gray does not identify the specific employment term or condition that was affected and with which she takes issue.

In this regard, it is undisputed that the University removed Jones from Gray's supervision following the EORC's investigation and findings pertaining to Jones' complaint. As such, the Court will consider whether that employment decision constitutes an adverse employment action.[2]

The Fifth Circuit has held that "[a]n employment decision is not an adverse action if it does not objectively worsen the employee's working conditions." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 232 (5th Cir. 2023) (citing *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 709 (5th Cir. 2016)). In its Reply [51], the University argues that the removal of Jones from Gray's supervision was not disadvantageous to her employment. The Court agrees. There is no dispute in this case that Jones and Gray had a difficult working relationship. Considering that undisputed fact together with the relevant objective standard, the Court finds that a reasonable jury could not conclude that removing Jones from Gray's supervision was disadvantageous or worsened Gray's working conditions. Notably, Gray raises no argument to the contrary in her Response Memorandum [48].

---

[2] Again, it is undisputed that the University opted to not remove Gray from her supervisory role as primarily recommended by the EORC report.

Alternatively, even if it did cause some disadvantage, the Court finds that such a change in Gray's work duties unaccompanied by any evidence of changes to her job title, schedule, compensation, or benefits merely constitutes a *de minimis* injury that is insufficient to support her Title VII claim. *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 431-32 (5th Cir. 2023). Because Gray fails to create a question of fact as to the third element of her claim, she has failed to show a prima facie case of racial discrimination. Her claim against the University is therefore subject to dismissal. The Court's inquiry could end here; but, even assuming that Gray did suffer some adverse employment action, her claim still fails on alternative grounds.

Concerning the fourth element of Gray's claim, the University argues that she cannot establish a prima facie case of race discrimination because she fails to point to a suitable comparator and has not established that she was replaced by someone outside of her protected class. In response, Gray does not contest the University's arguments on this point; rather, she argues that she can establish the fourth element under the Fifth Circuit's "work-rule." [48] at p. 19.

In cases involving a "work-rule" violation, "a prima facie case may be established by showing that the plaintiff did not violate the work-rule for which [she] was disciplined." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). The Court notes that the University contests that this is a "work-rule" violation case and argues that this doctrine is inapplicable because Gray was not disciplined for any such violation. Though the Court is inclined to agree, it will nonetheless consider Gray's arguments when analyzing pretext as her arguments in this regard overlap with her arguments regarding pretext.

Moving on to the next step of the *McDonnell Douglas* burden-shifting framework, Gray does not dispute that the University has provided a legitimate, nondiscriminatory reason for modifying her work duties (i.e. removing Jones from her supervision following the EORC report).

She then bears the burden of "produc[ing] substantial evidence indicating that the proffered legitimate[,] nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id*. Importantly, "[t]he plaintiff must rebut each nondiscriminatory reason articulated by the employer." *Id*.

Alternatively, under a mixed-motive theory applicable to her Title VII claim, Gray may "offer sufficient evidence to create a genuine issue of material fact that the defendant's reason, while true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic." *Jones v. Ashley Furniture Indus.*, LLC, 2026 WL 1788798, at *6 (N.D. Miss. June 22, 2026) (quoting *Stelly v. Dep't of Pub. Safety & Corr. La. State*, 149 F.4th 516, 525 (5th Cir. 2025)) (internal quotation marks omitted). To meet her burden under this theory, Gray must make, at minimum, "some showing that the protected characteristic was at least partially a motivating factor." *Id*.

Regarding pretext, Gray argues that "[t]he fact that the EORC found Gray guilty of discrimination, and recommended she be removed without any factual basis for that finding, should allow a reasonable jury to find that the University discriminated against Gray because of her race." [48] at p. 18. She also contends that "[b]randing the innocent white employee as a discriminator, and directing she be removed from all supervisory positions, is an act of discrimination because it was done because Gray is white, and the complaining employee was black." *Id*. at p. 21. The Court finds these arguments to be without merit.

During her deposition, Gray testified that she *assumed* the EORC's office had misstated facts in its report, such as her alleged comment indicating that she was uncomfortable around black

and non-white persons, "because that was the only way they could come up with something to side with a black over [her] as a white female." [47], Ex. 1 at p. 169. In other words, Gray's position is that the University is racially biased and tips the scale in favor of minorities while investigating discrimination complaints made to the EORC. She expounds on this position in her EEOC charge stating as follows:

> The only rational reason the committee could have made any finding of racism against me is that the University itself, acting especially through the "Office of Equal Opportunity and Regulatory Compliance[,]" is racially biased.
>
> The University of Mississippi has a well-known history of segregation, and therefore, wants to give the impression that it is not biased against black persons. Accordingly, in my case, it entered a finding of racism against me simply because I am a white person.

[1], Ex. 1 at p. 2.

Despite Grays contentions, she provides no evidence of disparate treatment regarding the manner in which the EORC conducts its investigations into discrimination complaints. As the University points out, even assuming that Gray is correct that the EORC's findings were inaccurate, it is well established that "evidence that the employer's investigation merely came to an incorrect conclusion does not establish racial motivation behind an adverse employment decision." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). Additionally, it undisputed that Easson decided to implement the EORC's alternative recommendation of removing Jones from Gray's supervision. In her response, Gray does not argue, much less provide any proof, that Easson, as the decisionmaker, unreasonably relied on the EORC's report. It follows that she has also failed to provide evidence demonstrating any discriminatory animus against her on the part of Easson (or any of the investigators of the EORC office).

Without more, the Court finds that Gray bases her discrimination claim upon her subjective belief, which the Fifth Circuit has consistently held is insufficient to establish pretext. *See Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001). By the same token, the Court finds Gray's position that no reason other than discriminatory animus against her explains the University's actions is speculative at best. She otherwise fails to point to any evidence "of sufficient nature, extent, and quality to permit a jury to reasonably infer [racial] discrimination[,]" *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022), and she cannot meet her burden at this stage by pointing to speculation and conjecture. *See Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) ("A non-movant will not avoid summary judgment by presenting speculation, improbable inferences or unsubstantiated assertions.").

In sum, even if Gray had met her prima facie burden, her claim nonetheless fails at the pretext stage. The Court finds that she has failed to establish a question of fact as to pretext and therefore her race discrimination claim against the University is due to be dismissed for this additional reason.[3]

## *IV. Conclusion*[4]

For the foregoing reasons, the Court finds that the University's Motion for Summary Judgment [38] should be granted and Gray's Title VII race discrimination claim against it dismissed.

[3] As a final matter, the University passingly argues that Gray has waived any claim based on a mixed-motive causation theory. *See* [39] at p. 16. The Court notes that Gray only provides the relevant standard but raises no argument under that theory in her Response Memorandum [65]. She does, however, argue that this is a pretext case and only applies a pretext analysis to her claim. *See* [48] at p. 21. Accordingly, the Court finds that Gray has waived any Title VII claim based on a mixed-motive theory. *See Criner v. Texas--New Mexico Power Co.*, 470 F. App'x 364 (5th Cir. 2012) (affirming the district court's finding that plaintiff waived her mixed-motive theory in failing to raise any argument in response to summary judgment and only applying the pretext analysis to plaintiff's claims).

[4] To the extent the Court has not specifically addressed the parties' remaining arguments, it has considered them and determined that they would not alter the result.

An order in accordance with this opinion shall issue this day.

THIS, the 9th day of October, 2026.

*/s/ Glen H. Davidson*______________
SENIOR U.S. DISTRICT JUDGE